## COLWELL v. E. R. ALLEN FOUNDRY CO.

(Supreme Court, Appellate Division, Second Department. January 10, 1908.)

BROKERS—CONTRACTS—ABANDONMENT—INSTRUCTIONS.

    A castings broker negotiated a contract for castings to be furnished by defendant to a manufacturer under an arrangement for one-fourth of a cent a pound commission. After the delivery of a trial order the manufacturer refused to do business with defendant through a broker, and so informed the broker. He attempted to induce it to change its determination, and, finding himself unable to do so, attempted to induce it to place its business with other foundries. The manufacturer thereafter purchased castings direct from defendant, for which the broker claimed commissions. *Held*, that the jury was authorized to find an attempt of the broker and defendant to abandon the contract for commissions, and that the court erred in refusing to charge that, if the contract was abandoned after the delivery of the trial order and before the manufacturer negotiated with defendant direct, then defendant was entitled to make a new contract for castings without liability for commissions.

Appeal from Trial Term, Kings County.

Action by Robert Colwell, Jr., against the E. R. Allen Foundry Company, revived after the death of the plaintiff in the name of Robert Colwell, as administrator, etc., of decedent's estate. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial, defendant appeals. Reversed, and new trial granted.

Argued before WOODWARD, JENKS, HOOKER, RICH, and MILLER, JJ.

James O. Sebring, for appellant.

George W. Wingate, for respondent.

HOOKER, J. This verdict represents a commission of one-fourth of a cent per pound upon castings manufactured by the defendant for the Parsons Manufacturing Company, to which company the defendant had been introduced by the plaintiff's intestate, Robert Colwell, Jr., a broker in castings. The broker died subsequent to the action, and the present plaintiff, his administrator, was substituted as plaintiff. The plaintiff's evidence tended to show that Mr. Allen, whose authority to bind the defendant was undisputed, called on Colwell, Jr., the broker, seeking contracts for the manufacture of castings; that the broker showed him a blue print of a design of a grate bar casting, and after some discussion between them Allen stated he felt sure that the defendant could make that casting and that he would like to see the casting himself, and stated that if the broker would take him to a place where he could see the castings himself, so that he could determine whether he could make them, and if he undertook to make any castings for this concern, he would pay the broker one-quarter of a cent a pound commission on all that he sold them, provided the broker would take him, after he had seen the casting and decided whether he could make it, to the principal, and let him make his own price and do his own negotiating as to the price and time of delivery. The broker accepted the proposition, exhibited the castings, Allen was satisfied that his concern could make them, the broker introduced Allen to the Parsons Manufacturing Company, the consumer

of those castings, and there resulted a contract between the Parsons Manufacturing Company and this defendant for the manufacturing of two car loads of castings for the defendant as a trial order, which were delivered by the defendant and paid for by the Parsons Manufacturing Company, out of which payments the defendant remitted to the broker a quarter of a cent a pound. After this delivery Allen called upon the Parsons Company seeking more business, and was asked whether there was any commissionman or broker between the Parsons Company and the defendant. He stated that there was. The broker was Mr. Colwell, and was then advised that the Parsons Company would not deal with any manufacturer where there was a broker between them for two or three reasons, which were enumerated, and was advised that this condition would prevent further business between them. Allen repeated the incident to the broker, who replied, "I am sorry about that." Later the broker called upon the Parsons Manufacturing Company in an endeavor to bring about a resumption of dealing between it and the defendant, but was told what Mr. Allen had been advised, namely, that they would not deal with a manufacturer where there was a broker between them. A week or so later the Parsons Company received some large orders, which necessitated an unusually large number of castings in a short time, and it commenced negotiations direct with the defendant for the supplying by it of certain castings, similar in the main to the two car loads of castings which had been manufactured as a trial order. From that time up to the commencement of the action the defendant manufactured for and delivered to the Parsons Company several hundred thousand pounds of castings, on which it has refused to pay the broker any commissions. This action was to recover commissions on all deliveries subsequent to the two car loads of the trial order.

The defendant asked the court to charge the jury that, if the contract between the defendant and Colwell was abandoned by the parties after the delivery of the two car loads of the trial order and before the negotiating of the Parsons Company with the defendant direct, then the defendant had a right after that to take up the matter with the Parsons Manufacturing Company, and, if they obtained business from the Parsons Manufacturing Company after that, Colwell was not entitled to the commissions thereon. This request was refused, and the defendant excepted. As an abstract proposition of law, it cannot be doubted that the request expressed the true legal principle; for, generally, if the parties to a contract by mutual consent abrogate or by their conduct abandon the contract between them, either party is free to contract elsewhere, without respect to the provisions of the former contract. The request was refused by the learned trial court, evidently, upon the theory that there was not only no evidence of a mutual abrogation of the contract for the payment of commissions, but also no evidence of an abandonment of that contract between the broker and the defendant. We think, however, the court fell into error, and that the jury would have been justified in finding that it was the intent of Colwell and the defendant to abandon the contract for the payment of commission; for the statements and conduct of Colwell were susceptible of that interpretation, and it was for the jury to

say whether or not there was a mutual intent to abandon. Colwell had been told that because of his presence in the deal there could be no further dealings between the Parsons Company and the defendant. He expressed regret, and at once called upon the Parsons Company and made an effort to induce them to revise their determination, and later, when he found himself unable to induce the Parsons Company to deal with the defendant, tried to get them to place their business with other foundries. For this error in refusing to charge as requested, the judgment must be reversed.

The judgment and order should be reversed, and a new trial granted; costs to abide the event. All concur.